UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACY LYNN SCHNEIDER,<br><br>      Plaintiff,<br><br>-against-<br><br>RICHARD CHIPMAN; LEONARD TIERNEY; COAST TO COAST STAFFING LLC; STAFFINVEST HOLDING LLC; MADISON RESOURCES FUNDING LLC; NESC STAFFING CORP.; NESC STAFFING LLC; PARTNERS PERSONNEL MANAGEMENT; OTHERS,<br><br>      Defendants. | 25-CV-3595 (LLS)<br><br>ORDER OF DISMISSAL<br>WITH LEAVE TO REPLEAD |

LOUIS L. STANTON, United States District Judge:

  Plaintiff, who is appearing *pro se*, brings this action under the court's diversity of citizenship jurisdiction, alleging that Defendants violated her rights under state and federal law. Named as Defendants are Richard Chipman, Leonard Tierney, Coast to Coast Staffing LLC, StaffInvest Holding LLC, Madison Resources Funding LLC, NESC Staffing Corp., NESC Staffing LLC, Partners Personnel Management Services, and "others." (ECF 1, at 1.) By order dated May 14, 2025, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead her claims in an amended complaint.

## STANDARD OF REVIEW

  The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff, who provides a Florida address for herself, invokes the court's diversity of citizenship jurisdiction, alleging that Defendants violated her rights in their business dealings with her and Chartwell Staffing Services, Inc. ("Chartwell"), a company of which Plaintiff alleges she is a minority shareholder.

The following allegations are drawn from the complaint. Plaintiff and her former spouse co-founded Chartwell in 2011 and built the business into a "nationally recognized staffing agency." (ECF 1, at 12.) Beginning in or around 2019, Defendants "engaged in a coordinated scheme to wrongfully deprive Plaintiff . . . of her rightful ownership, control, and financial interests" in Chartwell and its related business operations. (*Id.* at 9.) Defendants "[p]ressured, coerced, and manipulated" Plaintiff into relinquishing her controlling interest in Chartwell "under false pretenses"; "[m]isused internal corporate mechanisms and funding structures" to consolidate their power; misused corporate resources and misrepresented material facts "to conceal their wrongful conduct"; retained Defendant Colucci "to facilitate and legalize the wrongful takeove"; converted company asserts for their own benefit without authorization from Plaintiff; and "[b]reached express and implied agreements related to corporate funding, insurance structures, and operational management." (*Id.*)

Defendants "created overwhelming pressure on Plaintiff," which "ultimately back[ed] her into selling a 75% controlling interest in [Chartwell] under terms that were unfair, coercive, and far below fair market value." (*Id.* at 10.) While Plaintiff was experiencing financial distress, she was "coerced into executing an asset agreement with StaffIInvest Holding LLC, an entity solely owned and controlled by Leonard Tierney, transferring a 75% controlling interest in Chartwell to Tierny." (*Id.* at 12.) Plaintiff was left with only a 25% minority ownership interest. Chipman and Tierny, without Plaintiff's knowledge, "marketed and solicited offers for an asset sale of [Chartwell]" while "manipulat[ing] Chartwell's cash flow, inflat[ing] Madison Resources' factoring and funding fees, and den[ying] Plaintiff access to full, accurate and unredacted financial records." (*Id.* at 10.)

3

Plaintiff alleges that, despite her 25% ownership interest, she has been denied notice of transactions involving Chartwell, as well as access to accounting and tax records and internal company documents, despite having made multiple requests.

Plaintiff further alleges that Defendants engaged in "creative accounting" practices, including "the improper use of a $10 million Captive Insurance Fund originally designated for corporate risk management purposes," and "misappropriation and diversion of PPP (Paycheck Protection Program) funds intended to support payroll operations during the COVID-19 pandemic." (*Id.*)

Plaintiff was "compelled to sign multiple stacked confidentiality agreements with Chartwell and StaffInvest under coercive conditions and without meaningful opportunity to negotiate." (*Id.* at 13.) These agreements have "been weaponized" against Plaintiff in order to "isolate and silence" her. (*Id.*)

Plaintiff also alleges that she was "unlawfully removed from company health insurance coverage without receiving COBRA continuation" which she alleges violates her rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161. (*Id.*)

Plaintiff asserts that Defendants' actions "constitute breach of fiduciary duty, corporate oppression, fraudulent concealment, and self-dealing, as well as a violation of [her] federal due process rights under the Fourteenth Amendment." (*Id.*)

Plaintiff seeks money damages and injunctive and declaratory relief.

## DISCUSSION

**A.     Claims under federal law**

Although Plaintiff invokes the court's diversity of citizenship jurisdiction as the jurisdictional basis of her claims, she also attempts to assert claims under federal law that Defendants violated her constitutional right to due process and her rights under COBRA.

4

1. **Due process claims**

Plaintiff asserts that Defendants violated her right to due process under the Fourteenth Amendment. Such claims arise under 42 U.S.C. § 1983. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Defendants are all private parties who are not alleged to work for any state or other government body, Plaintiff has not stated a claim against them under Section 1983. The Court therefore dismisses Plaintiff's due process claims, brought under Section 1983, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

2. **COBRA**

The only other federal claim that Plaintiff asserts is that Defendants violated her rights under COBRA, 29 U.S.C. § 1161. "COBRA provides employees who have employment related group health insurance coverage the opportunity to elect continuation of coverage under the plan in the event of a qualifying event, which includes the termination of employment." *Polito v. Tri-Wire Eng'g Sol., Inc.*, 699 F. Supp. 2d 480, 488-89 (E.D.N.Y. 2010) (citing 29 U.S.C. § 1161). Specifically, COBRA provides that, "[t]he plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event [the right], under the plan, to elect within the election period, the continuation [of] coverage under the plan." 29 U.S.C. § 1161(a). The employer must notify the plan administrator of a qualifying event, 28 U.S.C. § 1166(a)(2), and "[t]he administrator shall notify

5

. . . any qualified beneficiary with respect to such event, and of such beneficiary's rights under this subsection," 29 U.S.C. § 1166(a)(4)(A). Under COBRA, a "qualified event" includes death of the employee, termination or reduction in hours, divorce or legal separation, the covered employee becoming entitled to Social Security benefits, a dependent child ceasing to be a dependent, and "[a] proceeding in a case under Title 11 . . . with respect to the employer from whose employment the covered employee retired at any time." 29 U.S.C. § 1163.

An employer's only obligation under COBRA is to notify the administrator of the qualifying event, after which the administrator must give notice under COBRA to the particular beneficiaries of their right to continuation of coverage." *Hylton v. RY Mgmt.*, No. 05-CV-6710 (GBD), 2006 WL 2088196, at *6 (S.D.N.Y. July 25, 2006). COBRA "does not obligate employers to pay premiums for any coverage that an employee elects." *Polito*, 699 F. Supp. 2d at 489.

Here, Plaintiff's only allegation is that she was "unlawfully removed from company health insurance coverage without receiving COBRA continuation." (ECF 1, at 13.) She does not allege any facts suggesting that she was an employee of any of the defendants, that she had employment-related group health coverage, that she experienced a qualifying event, that her employer failed to notify the plan administrator of any such qualifying event, or, even though she does not name the plan administrator as a defendant, that the plan administrator failed to provide her with notice of her opportunity to elect to continue coverage. The Court therefore dismisses Plaintiff's claims under COBRA for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff 30 days' leave to replead her claims under COBRA, should she be able to allege sufficient facts to state a viable claim.

**B.     Claims under state law**

To bring a state law claim in federal court, a plaintiff must either allege facts demonstrating that the court has diversity of citizenship jurisdiction of the action, or, if the plaintiff asserts a viable federal claim, the court can exercise supplemental jurisdiction of the state law claims.

**1.     Diversity of citizenship jurisdiction**

To establish diversity of citizenship jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). For diversity purposes, an individual is a citizen of the state where he or she is domiciled, which is defined as the place where the individual "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* A corporation, however, is a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters). A limited liability company ("LLC") is deemed to be a citizen of each state of which its members are citizens. *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *see also Moran v. Proskauer Rose LLP*, No. 1:17-CV-0423, 2017 WL 3172999, at *3 (N.D.N.Y. July 26, 2017) (holding that a limited liability partnership retains the state citizenships of all of its members).

In addition, to establish diversity jurisdiction, a plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory

7

jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Here, Plaintiff invokes the court's diversity jurisdiction, but she does not allege facts demonstrating that the parties are citizens of diverse states. Plaintiff provides a West Palm Beach, Florida address for herself, but she also alleges that she is a citizen of the States of New Hampshire and California. (*See* ECF 1, at 2, 3.) It is unclear in which state she is domiciled.

Plaintiff provides the same Portsmouth, New Hampshire business address for Defendants Tierney, Chipman, Coast to Coast Staffing LLC, StaffInvest Holding LLC, Madison Resources Funding LLC, NESC Staffing Corp., NESC Staffing LLC. She provides a Santa Barbara, California address for Partners Personnel Management Services. With respect to the individual Defendants Tierney and Chipman, Plaintiff does not provide residential addresses or allege their states of citizenship. Plaintiff sues multiple LLCs, but she does not allege the citizenship of each member of the LLC. Furthermore, NESC Staffing Corp. and Partners Personnel Management Services appear to be corporations. Even if the Court assumes that the New Hampshire address provided by Plaintiff is the corporate headquarters of these entities, she does not allege the states in which they are incorporated.[1]

Plaintiff therefore has not alleged sufficient facts demonstrating that the parties are diverse and therefore that the Court has diversity of citizenship jurisdiction of her state law

---

[1] Plaintiff uses the court's complaint form to allege, without providing facts specific to each defendant, that all defendants are citizens of the States of New Hampshire, Massachusetts, and California, and that all defendants are incorporated in the State of Delaware and maintain their principal places of business in the State of New Hampshire. (*See* ECF 1, at 3.) In the same section of the complaint form, Plaintiff alleges that she is a citizen of the States of New Hampshire and California. (*See id.* at 2.) To the extent these conclusory allegations are correct, which is doubtful since an individual can have only one domicile, the Court lacks diversity jurisdiction because Plaintiff and Defendants are all citizens of California and New Hampshire.

claims.[2] The Court grants Plaintiff leave to file an amended complaint alleging facts demonstrating that the Court has diversity jurisdiction of her state law claims.

2. **Supplemental jurisdiction**

The second way in which a federal court can consider state law claims is under its supplemental jurisdiction. A district court may decline to exercise supplemental jurisdiction of state law claims, however, when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

C. **Application for *pro bono* counsel**

Along with the complaint, Plaintiff also filed an application for the Court to request *pro bono* counsel. (ECF 2.) The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 60-62 (2d Cir. 1986).

---

[2] Because Plaintiff seeks $7.7 million in damages, the Court assumes, for the purposes of this order, that her claims are worth more than the $75,000 jurisdictional minimum.

Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Because the Court is dismissing the complaint, Plaintiff's motion for counsel is denied without prejudice to renewal at a later date, should she file an amended complaint.

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under COBRA and/or plead facts demonstrating that the Court has diversity of citizenship jurisdiction of her state law claims, the Court grants Plaintiff 30 days' leave to amend her complaint to address the deficiencies identified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court denies Plaintiff's application for Court to request *pro bono* counsel without prejudice to renewal at a later time. (ECF 2.)

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   October 9, 2025
         New York, New York

                                              _____
                                              LOUIS L. STANTON
                                              U.S.D.J.